## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SHELBY MOSES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 05-2488-KHV** |
| CHRIS HALSTEAD, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Garnishee | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

This garnishment action stems from a one-vehicle accident in which plaintiff Shelby Moses sustained bodily injuries in a car operated by Chris Halstead. Plaintiff, who owned the car, was in the back seat at the time of the accident. On November 20, 1997, Allstate Insurance Company ("Allstate"), which insured the car, rejected plaintiff's offer to settle all of her claims against Halstead for $25,000 (the policy limits). Plaintiff then sued Halstead in the Circuit Court of Buchanan County, Missouri, and received a jury verdict of $100,000. In partial satisfaction of the judgment, Allstate paid plaintiff the policy limits of $25,000. Plaintiff then registered her judgment in the District Court of Atchison County, Kansas, and requested an order of garnishment, alleging that Allstate had negligently and in bad faith refused to accept her offer to settle for policy limits. Allstate removed the action to this Court on November 18, 2005. The case comes before the Court on Allstate's Motion For Summary Judgment (Doc. #49) filed September 26, 2006 and Motion To Strike The Opinions Of Plaintiff's Expert Witness (Doc. #55) filed October 27, 2006. For reasons

set forth below, the Court finds that Allstate's motions should be overruled.

<u>**Facts**</u>

On November 22, 1996, Halstead wrecked plaintiff's car while she rode in the back seat, causing plaintiff severe injuries. Allstate had issued a motor vehicle insurance policy for the car and its initial factual investigation revealed that before the accident, Halstead had rammed a police vehicle in Kansas, then led police on a car chase into Missouri. A few minutes after officers lost sight of the car, Halstead ran off the road and overturned the vehicle.

On January 30, 1997, Allstate referred the matter to counsel, Dick Modin, for a legal opinion whether the insurance policy covered Halstead's conduct. Modin contacted and interviewed some of the police officers involved in the car chase. On February 17, 1997, Modin sent Allstate a memo which stated that he assumed that plaintiff would present evidence that Halstead was driving the vehicle with her consent, so that Halstead would be an insured under the policy. Modin suggested, however, that Halstead's conduct was intentional criminal conduct and was thus excluded from coverage. Doc. #50-6 at 2. Modin based his conclusion on the assumption that Halstead had wrecked the car during a high speed chase with police. He noted that if the chase had ended before the accident, the criminal conduct exclusion would not apply.[1] Modin's notes to the file stated that "the odds are against us" and that if contested, Allstate had a 30 per cent chance of winning the coverage issue.[2]

On March 4, 1997, Allstate sent Halstead a letter which stated that it was denying coverage

---

[1] During its factual investigation, Allstate never interviewed plaintiff or Halstead to determine their version of the facts that led up to the accident.

[2] The record does not reflect whether Modin communicated this assessment to Allstate.

pending further investigation.  See Doc. #58, Ex. E.  Although Allstate knew that Halstead was in the Atchison County jail, it sent the letter to his address in Topeka.  See id., Ex. F, G; Doc. #50, Ex. 2.  The letter was returned undelivered.

On April 28, 1997, Modin sent Allstate a copy of the statement of Police Corporal Bobby Young.  Young's statement indicated that on November 22, 1996, Halstead rammed Young's police car after Young tried to pull him over.  Young  pursued Halstead's vehicle into Missouri but broke off the chase a few minutes before the accident when he lost sight of the vehicle.

On November 17, 1997, plaintiff sent Allstate a demand for $25,000 in policy limits, plus a statement of medical bills totaling $79,350.38.  See Doc. #50, Ex. 1-A.  On November 20, 1997, Allstate declined the demand based on lack of coverage.  Doc. #50, Ex. 1.  Allstate did not inform Halstead of the settlement offer.

In July of 2000, plaintiff filed suit against Halstead.  On July 26, 2000, Allstate sent Halstead a reservation of rights letter stating that it denied coverage but would defend him under the policy.[3] Allstate hired attorney Tim Mudd to represent Halstead.  In August of 2001, Allstate filed a declaratory judgment action seeking a ruling that Halstead's conduct was not covered by the policy.[4]

---

[3]        The Kansas Supreme Court has explained the reservation of rights as follows:

a liability insurer which assumes the defense of an action against the insured may save itself from the bar of waiver or estoppel in a subsequent action upon the policy if, in the action against the insured, it clearly disclaims liability under the policy, and gives notice of its reservation of a right to set up the defense of noncoverage.

Bogle v. Conway, 199 Kan. 707, 711-12, 433 P.2d 407 (1967) (to escape waiver or estoppel, insurance company must provide proper nonwaiver and reservation of rights notice to insured).

[4]        Allstate moved to consolidate the declaratory judgment action with plaintiff's tort case against Halstead.  Over Halstead's objection, the state trial court granted the motion.

3

Allstate filed a motion for summary judgment in the declaratory judgment action.  After the trial court denied the motion, Allstate dismissed the declaratory judgment action.  At that point, Allstate tried to settle plaintiff's claim by making an offer for policy limits.[5]  When Allstate could not settle the case, it instructed Mudd to proceed to trial.  Mudd did not advise Halstead of other options, such as settling the case by settlement, confession of judgment, a covenant not to execute or related procedure.

On September 9, 2002, the case was tried to a jury which returned a verdict of $100,000.  Plaintiff appealed and the Missouri Court of Appeals affirmed.  See Doc. #58, Ex. F, G.  Allstate then paid the $25,000 policy limits.  See Exhibit 1, ¶ 16.

Once plaintiff obtained a judgment against Halstead, she became his judgment creditor.  She then attempted to collect the judgment from the insurer, Allstate, in this garnishment proceeding.  See Stewart v. Mitchell Transp., Inc., 197 F. Supp.2d 1310, 1316 (D. Kan. 2002) (automobile accident victim may not sue insurer directly by asserting third-party beneficiary status; only when claimant becomes judgment creditor against tortfeasor may she file direct action against insurer).  A proceeding in garnishment is a means of attachment by which monies, credits or effects of a debtor may be reached in the hands of another person.  Land Mfg., Inc. v. Highland Park State Bank, 205 Kan. 526, 528, 470 P.2d 782 (1970) (citing Kan. Stat. Ann. § 60-716).  Under long standing garnishment law in Kansas, once judgment has entered, the judgment creditor then takes the place of the judgment debtor and may take that which the latter could enforce.  Farmco, Inc, v. Explosive Specialists, Inc., 9 Kan. App.2d 507, 515, 684 P.2d 436, 442 (1984) (citing Nichols v. Marshall, 491

---

[5]      Before the state court trial, Allstate knew that any jury verdict would exceed the policy limits and evaluated the case as one of clear liability and damages in the range of $300,000 to $800,000.

F.2d 177, 183 (10th Cir. 1974)). A judgment creditor in a personal injury case may proceed by garnishment against the tortfeasor's insurer to satisfy within policy limits the judgment obtained against the tortfeasor. Id., 648 P.2d at 442-43. Kansas courts have gone a step farther and have held that a judgment creditor may proceed by garnishment against a tortfeasor's insurer for the unpaid balance of the judgment which is in excess of the policy limits where the insurer refused to settle within policy limits by virtue of negligence or bad faith. Id. at 443. The Kansas courts have found that such claim sounds in contract and is subject to garnishment even though unliquidated. Id. (citing Gilley v. Farmer, 207 Kan. 536, 485 P.2d 1284 (1971) and Bollinger v. Nuss, 202 Kan. 326, 449 P.2d 502, 508 (1969) (in garnishment proceeding injured party steps into shoes of insured party and Court analyzes claim as if insured party was bringing claim)).

Plaintiff filed this garnishment action claiming that Allstate is liable for the entire judgment against Halstead because it acted negligently or in bad faith when it did not timely inform him of plaintiff's offer to settle in November of 1997 and did not settle the liability claim in the face of the coverage dispute. Specifically, the pretrial order summarizes plaintiff's claims as follows:

> Allstate: (1) failed to obtain a timely, adequate, and unambiguous reservation of rights with Halstead, and/or repudiated the reservation of rights by filing a declaratory judgment action; (2) failed to use reasonable efforts or measures to resolve the coverage dispute promptly or in such a way to limit any potential prejudice to Halstead; (3) failed to properly consider the substance of the coverage dispute or the weight of legal authority on the coverage issues; (4) failed to exercise diligence and thoroughness in investigating acts pertinent to coverage; (5) failed to make appropriate and timely efforts to inform Halstead of offers to settle, or settle the liability claim in the face of the coverage dispute; (6) failed to follow the advice of Tim Mudd, and/or instructed and caused Mudd to act adverse to Halstead's best interest; (7) took a course of conduct intended to prejudice and sabotage Chris Halstead on the coverage issue; (8) violated the equal consideration rule and (9) failed to follow Dick Modin's advice to procure a valid reservation of rights agreement with Chris Halstead.

See Pretrial Order at 7-8.[6]

Allstate asserts that it is entitled to summary judgment because its failure to settle for policy limits was neither negligent nor in bad faith. Specifically, Allstate argues that when it declined to pay the policy limits demand in November of 1997, it had a reasonable and good faith belief that the policy provided no coverage.

## I.    Motion To Strike Expert's Opinions

Plaintiff has proffered the expert opinions of Randall Fisher, an attorney, on the standard of care in handling an insurance claim. Defendant asserts that the Court should exclude Fisher's testimony because his opinions (1) would not be helpful to the trier of fact and (2) include inadmissible legal conclusions.

The Court has broad discretion in deciding whether to admit expert testimony. See Kieffer v. Weston Land, Inc., 90 F.3d 1496, 1499 (10th Cir. 1996). Rule 702, Fed. R. Evid., provides that a witness who is qualified by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

---

[6]    Magistrate Judge David J. Waxse sustained Allstate's objections to plaintiff's factual contentions 1-4 and 6-9 because plaintiff had not included them in her reply to Allstate's answer (Doc. #3). Plaintiff included exactly the same nine statements as "theories of recovery" in the pretrial order, however, and Allstate apparently did not object. Allstate asserts that the only issue before the Court is whether it acted negligently or in bad faith when it declined to pay plaintiff's policy limits demand on November 20, 1997. On February 14, 2007, plaintiff filed a motion to reconsider the magistrate's ruling on the objections to the pretrial order. Because that question is pending before Judge Waxse, and because Allstate's motion for summary judgment must be overruled in any event, the Court directs Judge Waxse to clarify his ruling with regard to the pretrial order.

principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  The touchstone of Rule 702 is helpfulness of the expert testimony, a condition that goes primarily to relevance.  See BioCore, Inc. v. Khosrowshahi, 183 F.R.D. 695, 699 (D. Kan. 1998).  Thus, the Court must determine whether the proffered evidence would be helpful to the trier of fact.  See id. at 699.

Fisher has practiced in state and federal court in Kansas for 30 years, and has written numerous books and articles on Kansas automobile insurance law.  Fisher is clearly qualified to testify as an expert.  See Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993).

Briefly summarized, Fisher's report includes the following opinions: (1) the facts and law do not support Allstate's position that Halstead was not a permissive user; (2) Halstead's conduct was not subject to the policy exclusion for criminal acts; (3) Allstate should have ensured that Halstead received the initial reservation of rights letter because it knew that he was in the Atchison County jail; (4) Allstate should have notified Halstead of plaintiff's policy limits demand in November of 1997; (5) Allstate's reservation of rights letter should have specified the actions which Allstate intended to take in Halstead's defense; and (6) Mudd did not provide Halstead good legal advice.

As noted, Allstate asserts that the Court should strike Fisher's opinions because (1) his opinions would not be helpful to the trier of fact, and (2) his report includes inadmissible legal conclusions.  To the extent that Fisher's opinions include legal conclusions, the Court notes that the case is set for a bench trial, and the Court is capable of screening factual statements from legal conclusions.

Allstate also contends that Fisher's opinions will not assist the trier of fact because the facts

7

are not so complicated as to require the testimony of an expert witness.  See Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991) (touchstone of admissibility of expert testimony is its helpfulness to trier of fact).  When the normal experiences and qualifications of lay jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.  Wilson v. Muckala, 303 F.3d 1207, 1219 (10th Cir. 2002) (citing Frase v. Henry, 444 F.2d 1228, 1231 (10th Cir. 1971)).

As discussed below, the Court must evaluate five factors to determine whether Allstate acted in bad faith or negligently when it declined plaintiff's policy limits demand in November of  1997. These factors include (1) whether the insured was able to obtain a reservation of rights; (2) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way to limit any potential prejudice to the insured; (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue; (4) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and (5) efforts made by the insurer to settle the liability claim in the face of the coverage dispute.  Associated Wholesale Grocers, Inc. v. Americold Corp., 261 Kan. 806, 846, 934 P.2d 65, 90 (1997).  Here, the Court agrees that most of the facts are not so complicated as to require the testimony of an expert witness.  See Wilson 303 F.3d at 1219.  On the other hand, Fisher's expertise in the process of handling an insurance defense case and the standard of care regarding that process would be helpful to the Court.  See Lone Star Steakhouse & Saloon, Inc. v. Liberty Mutual Ins. Group, 343 F. Supp.2d 989 (D. Kan. 2004) (court allowed expert testimony regarding insurance industry standards and practices and whether insurance company's actions  conformed to those standards).  The Court therefore finds that Allstate's motion to strike should be overruled.

## II.     Motion For Summary Judgment

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on their pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment."  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a

9

motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## Analysis

Plaintiff asserts that Allstate breached its duty to act in good faith and without negligence in defending and settling her claim against its insured, Chris Halstead. Under Kansas law, such a claim is a contract action. See Stewart, 197 F. Supp.2d at 1310. "*Implicit* in the *usual* liability insurance policy is a covenant on the part of the insurer that, in defending or settling a claim against its insured, it will act in good faith and with reasonable care for his interests." Glenn v. Fleming, 247 Kan. 296, 309, 799 P.2d 79, 88 (1990) (further quotations and citations omitted); see Americold Corp., 261Kan. at 830, 934 P.2d at 81 (citing Bollinger, 202 Kan. at 333, 449 P.2d at 508) (in defending and settling claims against insured, insurer owes duty to act in good faith and without negligence).

Allstate argues that it is entitled to summary judgment because it had a reasonable and good faith belief that the policy provided no coverage when it declined to pay plaintiff's policy limits demand. Allstate asserts that in order to recover over the policy limits, plaintiff must show that it acted in bad faith in denying coverage and refusing the settlement demand and that mere negligence is not enough. In Glenn, the Kansas Supreme Court stated as follows:

> The question of an insurer's liability for an excess judgment depends upon the circumstances of the particular case and must be determined by taking into account the various factors present rather than on the basis of any general statement or definition.

10

The conduct of the insurer must not be viewed through hindsight. Instead, the offer and the strength of the plaintiff's case must be viewed as they fairly appeared to the insurer and its agents and attorneys at the time the offer was refused. Rector v. Husted, 214 Kan. 230, 239, 519 P.2d 634 (1974); Bollinger, 202 Kan. at 341, 449 P.2d 502.

An insurance company acting honestly and in good faith upon adequate information should not be held liable because it failed to prophesy the result. Something more than mere error of judgment is necessary to constitute bad faith. Bollinger, 202 Kan. at 341, 449 P.2d 502.

247 Kan. at 305-06, 799 P.2d at 85; see also Snodgrass v. State Farm Mut. Auto. Ins. Co., 15 Kan. App.2d 153, 804 P.2d 1012 (1991) (insurer's duty may be suspended if good faith question as to coverage).

The Kansas Supreme Court has noted that the distinction between the "bad faith" and "negligence" standards for insurers has long been blurred. Americold, 261 Kan. at 845, 934 P.2d at 89 (though "negligence" and "bad faith" not synonymous in strict legal sense, distinction less marked than terms would suggest). The Kansas Supreme Court explained that courts believed that "good faith" in its ordinary sense was too low a test for an insurer performing an insurance contract, and thus applied other tests such as "to act with due care, without negligence, fair dealing, etc." Id. at 845-46, 934 P.2d at 90 (quoting Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co., 232 Kan. 76, 80, 652 P.2d 665, 668 (1982) (terms simply statements of contractual obligation insurer undertakes under duty to defend)). The duty to act in good faith and without negligence applies to a liability insurer's coverage decision if the insurer uses lack of coverage as the reason for rejecting a reasonable settlement offer within policy limits. Id., at 846, 934 P.2d at 90. The Kansas Supreme Court in Americold stated that "[a]lthough we have previously said that something more than mere error of judgment is necessary to constitute bad faith, . . . negligence or a lack of good faith in the coverage investigation or the decision to deny coverage leading to a mistake in failing to settle

11

breaches the insurer's duty." <u>Id.</u> (insurance company not required to settle claim in face of good faith question regarding coverage).

The Kansas Supreme Court in <u>Americold</u> then addressed the standard which governs the issue before this Court, as follows:

> When an insurer rejects a policy limits settlement offer, the question of whether the insurer has breached the implied obligation to settle in good faith will invariably arise. While good or bad faith may be irrelevant to whether an insurer has breached its coverage obligation, it becomes relevant when the insurer bases its rejection of a policy limits settlement offer on coverage denial.

<u>Id.</u>  In <u>Americold</u>, the Kansas Supreme Court reaffirmed that an insurer's "negligence or lack of good faith in the coverage investigation or the decision to deny coverage leading to a mistake in failing to settle breaches the insurer's duty" to act in good faith and without negligence. <u>Id.</u>  It also adopted five factors to consider in determining whether a denial of coverage justifies an insurer in rejecting a policy limit demand.  <u>Id.</u> (citing <u>Robinson v. State Farm Fire & Cas. Co.</u>, 583 So.2d 1063, 1068 (Fla. Dist. Ct. App. 1991); <u>see also</u> <u>Wolverton v. Bullock</u>, 2000 WL 1546525, at *5 (D. Kan. Sept. 15, 2000).  These factors are (1) whether the insured was able to obtain a reservation of rights; (2) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way to limit any potential prejudice to the insured; (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue; (4) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and (5) efforts made by the insurer to settle the liability claim in the face of the coverage dispute.  <u>Americold</u>, 261 Kan. at 846, 934 P.2d at 90.

Plaintiff contends that the <u>Americold</u> factors apply in this case.  For some unexplained reason, Allstate's opening brief does not address <u>Americold</u> and Allstate did not file a reply brief.

This Court has previously applied the <u>Americold</u> factors to claims where an insurer rejected a policy limit demand based on denial of coverage.  <u>See Wolverton</u>, 2000 WL 1546525, at *5.  Plaintiff contends that under the <u>Americold</u> factors, she has demonstrated a genuine issue of material fact whether Allstate acted negligently or without good faith in the coverage investigation or the decision not to settle for policy limits.  The Court agrees.  Further, even under the good faith test set out in <u>Glenn</u>, plaintiff has presented evidence that Allstate did not act in good faith and without negligence when it declined the settlement demand based on lack of coverage.

The first <u>Americold</u> factor is whether the insured obtained a reservation of rights.  Under Kansas law, an insurance company may enter an agreement with an insured to defend the insured against a claim while reserving the right to assert that the claim is not covered.  Such an agreement must be fairly and timely made.  <u>See First Fin. Ins. Co. v. Bugg</u>, 265 Kan. 690, 708-10, 962 P.2d 515 (1998) (liability insurer which assumes defense of action against insured may save itself from bar of waiver or estoppel in subsequent action upon policy if, in action against insured, it clearly disclaims liability under policy and gives notice of reservation of right to set up defense of non-coverage).  Further, under Kansas law a reservation of rights notice must clearly set forth the reason for denial of coverage and inform the insured of his rights, including his right to decline the insurer's defense and the consequences if the insurer assumes the defense.  <u>See Bogle</u>, 199 Kan. at 712, 433 P.2d at 411; <u>cf. Ortiz v. Biscanin</u>, 34 Kan. App.2d 445, 459, 101 P.3d 252 ( 2004) (no duty to notify insured before suit that insurer is investigating whether coverage exists under policy).

On March 4, 1997, Allstate sent Halstead a letter which denied coverage.  Although Allstate files showed that Halstead was in the Atchison County jail, Allstate sent the letter to his address in Topeka.  The postal service returned the undelivered letter to Allstate, and Allstate did not send

another letter until July of 2000, more than three years later, after plaintiff filed suit against Halstead in Missouri. In the intervening three years, plaintiff's attorney had made two demands for settlement of the policy limits. Allstate refused those demands without consulting Halstead. Viewed in the light most favorable to plaintiff, the record reveals genuine issues of material fact whether plaintiff can prevail on this factor.

The second Americold factor is whether Allstate made efforts to promptly resolve the coverage dispute or to limit any potential prejudice to its insured. On November 17, 1997, plaintiff offered to settle for the policy limits of $25,000. Allstate has presented no evidence that it attempted to inform Halstead of this settlement offer. Rather, it appears that Allstate rejected the offer three days later, without consulting Halstead. At that point, Allstate knew that plaintiff had incurred medical costs of almost $80,000. Further, at the time Allstate rejected the settlement offer, it had not delivered the reservation of rights letter to Halstead. The record reveals genuine issues of material fact as to the second factor.

The third Americold factor is the substance of the coverage dispute or the weight of legal authority on the coverage dispute. Allstate claims that it determined that plaintiff's claim was not covered because Halstead's conduct fell under the intentional act exclusion. Modin's coverage memorandum to Allstate stated that the policy exclusion for damage from a criminal or intentional act was arguably consistent with the statutorily allowed exclusion for coverage "for damages arising from an intentional act." Kan. Stat. Ann. § 40- 3107. Modin then cited two criminal cases which involved criminal convictions for fleeing or attempting to elude a police officer. See State v. Walker, 226 Kan. 20, 22, 595 P.2d 1098, 1100 (1979) (actual knowledge by defendant that he is being sought for crime not prerequisite to admission of evidence of flight as tending to show

14

consciousness of guilt); <u>State v. Russell</u>, 229 Kan. 127, 622 P.2d 658, 662 (1981) (to violate K.S.A. § 8-1568 one need only ignore activated emergency equipment of police vehicle). Modin noted that he found no cases directly on point, but that Allstate has "some authority to argue." Doc. 50-6 at p. 6 (citing <u>Hamidian v. State Farm Fire & Cas. Co.</u>, 251 Kan. 254, 833 P.2d 1007 (1992) (intentional shooting related to bump and run robbery far removed from proper use of motor vehicle and thus precluded coverage under auto liability insurance); <u>Farm Bureau Mut. Ins. Co. v. Evans</u>, 7 Kan. App.2d 60, 63-64, 637 P.2d 491, 494 (1981) (injuries suffered when someone threw firecracker from vehicle not covered because not natural and reasonable incident or consequence of use of vehicle)). Modin then concluded that "Halstead drove fast and was mad at those pursuing him. His actions were intentional." Doc. #50-6 at 6. Even so, outside the formal memo, Modin noted that "the odds are against us" and that Allstate had only a "30 per cent chance of winning" on the coverage issue. The record reveals genuine issues of material fact whether plaintiff can prevail on the third factor.

The fourth factor in the <u>Americold</u> analysis is the insurer's diligence and thoroughness in investigating the facts pertinent to coverage. Plaintiff points out that neither Allstate nor Modin ever contacted Halstead or any other occupant of the car to determine how the accident happened. When Modin wrote his opinion letter on February 17, 1997, he stated that the factual investigation was not complete and that further investigation was needed to "lock up" the testimony of witnesses. The record reveals genuine issues of material fact concerning Allstate's diligence and thoroughness in investigating the facts pertinent to coverage.

Finally, the fifth factor in the <u>Americold</u> analysis is the effort by Allstate to settle the liability claim in the face of the coverage dispute. In November of 1997, Allstate rejected plaintiff's offer

15

to settle for policy limits without notifying Halstead of the offer.  After plaintiff filed suit – and after the state court denied Allstate's motion for summary judgment on its declaratory judgment action – Allstate offered to settle for policy limits.  Plaintiff rejected the offer and proceeded to trial, where she won a $100,000 judgment against Halstead.  The record reveals genuine issues of material fact concerning Allstate's efforts to settle the liability issue in the face of the coverage dispute.

On this record, the plaintiff has demonstrated genuine issues of material fact whether, applying the <u>Americold</u> factors, Allstate acted negligently or in bad faith.  The Court therefore finds that Allstate is not entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Allstate's   <u>Motion For Summary Judgment</u> (Doc #49) filed September 26, 2006 and the <u>Motion To Strike The Opinions Of Plaintiff's Expert Witness</u>  (Doc. #55) filed October 27, 2006 be and hereby are **OVERRULED**.

Dated this 28th day of February, 2007 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Court

16