## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SHELBY MOSES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 05-2488-KHV** |
| CHRIS HALSTEAD, | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| ALLSTEAD INSURANCE COMPANY, | ) | |
| | ) | |
| **Garnishee.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

This garnishment action stems from a one-vehicle accident in which Shelby Moses sustained

significant bodily injuries.  At the time of the accident, plaintiff was riding in a car  operated by

Chris Halstead and insured by Allstate Insurance Company.  On November 20, 1997, Allstate

rejected plaintiff's offer to settle her claims against Halstead for the policy limits of $25,000 plus

other conditions.  Plaintiff then sued Halstead in the Circuit Court of Buchanan County, Missouri,

and received a jury verdict of $100,000.  In partial satisfaction of the judgment, Allstate paid

plaintiff the policy limits of $25,000.  Plaintiff registered her judgment in the District Court of

Atchison County, Kansas, and requested an order of garnishment, alleging that in refusing to accept

her offer to settle for policy limits, Allstate had negligently and in bad faith breached its duty to

Halstead, its insured.  Allstate removed the action to this Court on November 18, 2005.  This matter

is before the Court on a bench trial and Allstate's Motion For Judgment As A Matter Of Law (Doc.

#96) filed April 18, 2007.  The Court finds that Allstate's motion for judgment as a matter of law

should be overruled.  The Court finds that plaintiff is entitled to judgment, and makes the following findings of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

## Findings Of Fact

Plaintiff's father gave her a car and insured it with Allstate.  On November 22, 1996, Halstead wrecked the car, with plaintiff in it.  On the day of the accident, police in Atchison, Kansas received a report that Halstead had been involved in criminal activity at a convenience store and that he had a weapon.  When they pursued Halstead, he rammed a police car and drove off.  Officers pursued Halstead's vehicle into Missouri, where sheriff's officers for Buchanan County, Missouri joined the pursuit.  The officers lost sight of the vehicle.  Minutes later Halstead ran off the road, overturning the vehicle and causing severe injuries to plaintiff.  Shortly after the accident, plaintiff's father reported the accident to Allstate, which began an investigation.

On January 9, 1997, plaintiff's counsel wrote Allstate a letter which stated in part as follows:

Please consider this my representation letter and also a demand letter on behalf of Shelby Moses who was a passenger in the subject vehicle at the time of the collision.
. . .
Both she and her father make the following claims:
1.      For the reasonable value of the 1989 Chevrolet Barreta.
2.      For PIP benefits including medical expenses to date up to the policy limits, and rehabilitation expenses and lost earnings.
3.      Policy limits of all subject policies for personal injuries.

Our claim is based upon the severe injuries, the high medical expenses, which although we don't know the exact amount of, presently approximate $80,000, and the fact that the injured party was not awake at any point in time when the events occurred on November 22, 1996.

We also reserve the right to make a first party claim against Allstate for not settling in good faith, and if our claims are not resolved in good faith, to seek all damages, including the damages in excess of the policy limits directly against Allstate.

Plaintiff's Ex. 8.  Four days later, on January 13, 1997, Allstate interviewed plaintiff's father.  He told Allstate that his daughter had permission to drive the car and that she had control of the vehicle most of the time.

On January 30, 1997, Allstate claims adjuster Wendy Griffith referred the matter to counsel Dick Modin, for investigation and a legal opinion whether the insurance policy covered Halstead's conduct.  Modin's associate contacted and interviewed some of the police officers involved in the car chase, including Police Corporal Bobby Young and Highway Patrol Officer J.C. Phillips.

On February 17, 1997, Modin sent Allstate a letter outlining his opinion as to coverage. Plaintiff's Ex. 11.  Modin stated that he assumed that plaintiff would present evidence that Halstead was driving the vehicle with her consent and that if so, Halstead would be an "insured" under the policy.[1]  Modin suggested that Halstead's conduct was intentional or criminal, however, and thus fell under the policy exclusion for "damages an insured  person is legally obligated to pay because of  bodily injury or property damages which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person." Plaintiff's Ex. 11 at 2; Plaintiff's Ex. 16.  Modin based his conclusion on the assumption that Halstead had wrecked the car during a high speed chase with police.  He noted that if the chase ended before the accident, the criminal conduct exclusion would not apply.[2]  Modin stated that he was still investigating whether the chase was over at the time of the accident, and said that he would let Griffith know what he turned up on that factual question.  He stated that he had made certain

_____

[1]     Under the policy, an insured includes any person using the insured auto with the owner's permission.  Id. at 1-2; Plaintiff's Ex. 16 at 5.

[2]     Plaintiff does not remember the accident, but Allstate never interviewed plaintiff or Halstead to determine whether the chase had ended before the accident.

factual assumptions, and that different facts could change his analysis and conclusion. Modin suggested that Allstate "give them a reservation of rights and invite them to do the research and make any suggestions that we are wrong." Plaintiff's Ex. 11 at 3. Modin enclosed a copy of a memorandum which noted that although no cases directly addressed the intentional acts exclusion in a similar fact situation, there was "some authority" on which to argue that it applied to this case.[3]

On February 21, 1997, Modin sent Allstate a copy of the Buchanan County sheriff's report and an unsigned draft of a statement from Officer Young. Modin stated that this completed his work on the matter unless Allstate thought he should do additional work. Officer Young's statement indicated that he had stopped pursuing Halstead before the accident. The Buchanan County sheriff's report indicated that Officer Jeff Gentry had also stopped the pursuit before the accident because he was unfamiliar with the area. Officer William Albertson stated that he had lost sight of the suspect, turned around and traveled a mile when he saw someone walking out of a ditch and then spotted the vehicle on its top about 20-25 feet off the roadway.

On March 4, 1997, although it had no information that Halstead was still attempting to elude

---

[3]     The memorandum cited two cases which were factually distinguishable from this case. See Hamidian v. State Farm Fire & Cas. Co., 251 Kan. 254, 262, 833 P.2d 1007, 1013 (1992) (intentional shooting related to bump and run robbery far removed from proper use of motor vehicle and thus precluded coverage under auto liability insurance); Farm Bureau Mut. Ins. Co. v. Evans, 7 Kan. App.2d 60, 63-64, 637 P.2d 491, 494 (1981) (injuries suffered when firecracker thrown from vehicle not covered because not natural and reasonable incident or consequence of use of vehicle).

The Kansas Court of Appeals recently held that driving a car at speeds of 100 m.p.h. in an attempt to elude police precluded coverage under an insurance policy which excluded coverage for "bodily injury caused intentionally" by the driver. See Thomas v. Benchmark Ins. Co., 36 Kan. App.2d 409, 417-18, 140 P.2d 438, 444-45 (2006) review granted, Nov. 8, 2006 (purposeful conduct in driving car at speeds of 100 m.p.h. virtually certain to lead to injury or loss; injury or loss therefore intentional for purposes of policy exclusion). Allstate points out that in Thomas, as here, the pursuing officer lost sight of the car before the driver lost control of the car.

police at the time of the accident, Allstate sent Halstead a letter which stated that it was denying coverage pending further investigation.  <u>See</u> Plaintiff's Ex. 14.  Allstate knew that Halstead was in the Atchison County jail, but it sent the letter to his address in Topeka.  The post office returned the letter as undelivered.

On April 28, 1997, Modin sent Allstate a signed copy of Officer Young's statement which indicated that on November 22, 1996, Halstead rammed his police car after he tried to pull him over. Officer Young pursued Halstead's vehicle into Missouri but broke off the chase a few minutes before the accident when he lost sight of the vehicle.

On November 17, 1997, plaintiff sent Allstate a letter which stated in relevant part as follows:

> Shelby Moses has authorized me to settle our claim in the amount of your policy limits [$25,000] and this offer shall remain open until the 1st day of December, 1997. My client will accept policy limits contingent upon Chris Halstead making arrangements for any overages, under oath, for this $800,000 claim.  A verified financial statement of all present or future assets will suffice.

Plaintiff's Ex. 17.  The letter also asked Allstate to waive personal injury protection reimbursement and to agree that the settlement would not release any subrogation claim by an underinsured motorist carrier.

Three days later, on November 20, 1997, Allstate declined plaintiff's settlement offer, stating that it had sufficient evidence to deny coverage to Halstead because "it is obvious Mr. Halstead was in the commission of a criminal act at the time this accident occurred."  Plaintiff's Ex. 18.  Allstate did not inform Halstead of the settlement offer.

In July of 2000, plaintiff filed suit against Halstead.  On July 26, 2000, Allstate sent Halstead

a reservation of rights letter stating that it denied coverage but would defend him under the policy.[4]

Allstate hired attorney Tim Mudd to represent Halstead.  In August of 2001, Allstate filed a

declaratory judgment action seeking a ruling that Halstead's conduct was not covered by the policy.[5]

Allstate filed a motion for summary judgment in the declaratory judgment action.  After the trial

court denied the motion, Allstate dismissed the declaratory judgment action.  At that point, Allstate

offered plaintiff the policy limits of $25,000.[6]  Plaintiff declined to settle, and the case proceeded

to trial with Mudd representing Halstead.

On September 9, 2002, the jury returned a verdict of $100,000 in favor of plaintiff against

Halstead.  Plaintiff appealed and the Missouri Court of Appeals affirmed.  Allstate then paid the

$25,000 policy limits.

Once plaintiff obtained a judgment against Halstead, she became his judgment creditor.  She

then attempted to collect the judgment from the insurer, Allstate, in this garnishment proceeding.

See Stewart v. Mitchell Transp., 197 F. Supp.2d 1310, 1316 (D. Kan. 2002) (automobile accident

---

[4]     The Kansas Supreme Court has explained the reservation of rights as follows:

> a liability insurer which assumes the defense of an action against the insured may
> save itself from the bar of waiver or estoppel in a subsequent action upon the policy
> if, in the action against the insured, it clearly disclaims liability under the policy, and
> gives notice of its reservation of a right to set up the defense of noncoverage.

Bogle v. Conway, 199 Kan. 707, 711-712, 433 P.2d 407, 410 (1967) (to preserve defense of non
coverage, insurance company must provide proper nonwaiver and reservation of rights notice to
insured).

[5]     Allstate moved to consolidate the declaratory judgment action with plaintiff's tort
case against Halstead.  Over Halstead's objection, the state trial court granted the motion.

[6]     Before the state court trial, Allstate knew that any jury verdict would exceed the
policy limits and evaluated the case as one of clear liability by Halstead and damages in the range
of $300,000 to $800,000.

victim may not sue insurer directly by asserting third-party beneficiary status; only when claimant becomes judgment creditor against tortfeasor may she file direct action against insurer).  Plaintiff claims that Allstate is liable for the entire judgment against Halstead because it acted negligently or in bad faith when it did not timely inform him of her offer to settle in November of 1997 and did not settle the liability claim in the face of the coverage dispute.  Allstate asserts that it is entitled to judgment because its failure to settle for policy limits was neither negligent nor in bad faith.

### Conclusions Of Law

As a preliminary matter, Allstate asserts that Missouri law applies to plaintiff's claims, while plaintiff argues that Kansas law applies.[7]  Both Kansas and Missouri  recognize a cause of action by an insured against his insurance company if it acts in bad faith in defending and settling claims against the insured.  See Bollinger v. Nuss, 202 Kan. 326, 332-333, 449 P.2d 502, 507-08 (1969); Ganaway v. Shelter Mut. Ins. Co., 795 S.W.2d 554, 556 (Mo. Ct. App. 1990).   In certain circumstances, the insurance company may be held liable to its insured under this theory, for a judgment which exceeds the insured's policy limits.  In Kansas, the insurance company can be held liable not only for acting in bad faith, but also for acting negligently.  Spencer v. Aetna Life & Cas. Ins. Co., 227 Kan. 914, 922, 611 P.2d 149, 155 (1980).  In contrast, Missouri requires proof that the insurer acted in bad faith.  Ganaway, 795 S.W.2d at 556.

Because this case is before the Court on diversity of citizenship, Kansas choice of laws rules determine which state's substantive law applies.  Mirville v. Allstate Indem. Co., 71 F. Supp.2d 1103, 1107 (D. Kan. 1999) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

---

[7]     Both parties based their summary judgment arguments on Kansas law.   The Court therefore applied Kansas law in ruling on that motion without addressing the choice of laws issue. As noted at trial, however, the pretrial order notes Allstate's assertion that Missouri law applies.

When addressing choice-of-law issues, the Kansas appellate courts follow the Restatement (First) of Conflict of Laws (1934).  See Layne Christensen Co. v. Zurich Canada, 30 Kan. App.2d 128, 142, 38 P.3d 757, 766 (2002).  The Restatement (First) contains two general principles for contracts cases.  The primary rule, lex loci contractus, calls for the application of the law of the state where the contract is made.  Wilkinson v. Shoney's, Inc., 269 Kan. 194, 209-10, 4 P.3d 1149 (2000); Restatement (First) of Conflict of Laws § 332 (1934).  The second rule provides that the law of the place of performance determines the manner and method as well as the legality of the acts required for performance.  Aselco Inc. v. Hartford Ins. Group, 28 Kan. App.2d 839, 848, 21 P.3d 1011, 1018 (2001); Restatement (First) of Conflict of Laws § 358.  In Aselco, the Kansas Court of Appeals found that where an insurance company's performance of its duty to defend would have taken place in Kansas, Kansas law governed that claim.  Aselco, 28 Kan. App.2d at 848, 21 P.3d at 1018 (applying performance rule on duty to defend issue and lex loci contractus to contract interpretation issue).  In this case, Allstate's duty to defend took place in Missouri, where the accident occurred and plaintiff filed the underlying lawsuit.  Therefore the Court applies Missouri law.

Under Missouri law, "[a]n insurance company has a duty to defend an insured when the insured is exposed to *potential* liability to pay based on the facts known at the outset of the case, no matter how unlikely it is that the insured will be found liable and whether or not the insured is ultimately found liable."  Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005).  The duty to defend is broader than the duty to indemnify.  McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999).

Inherent in a policy of insurance is the insurer's obligation to act in good faith regarding settlement of a claim.  This obligation is part of what the insured pays for.  Truck Ins. Exch., 162

8

S.W.3d at 93. When the insurer refuses to settle, the insured loses the benefit of an important

obligation owed by the insurer. Id. "An insurer's 'mere payment' of a judgment up to the policy

limits does not make the insured whole or place the insured into the same position as if the company

had performed its obligations under the policy. Id. (quoting Landie v. Century Indem. Co., 390

S.W.2d 558, 564 (Mo. Ct. App. 1965)).

The Missouri Court of Appeals has noted that Missouri case law on bad faith failure to settle

is scarce. Id. The elements of bad faith failure to settle include (1) the insurer assuming control over

negotiation and settlement and legal proceedings brought against the insured; (2) the insured

demanding that the insurer settle the claim; (3) the insurer refusing to settle the claim within the

liability limits of the policy, and (4) in refusing, the insurer acting in bad faith rather than

negligently. Dyer v. Gen. Am. Life Ins. Co., 541 S.W.2d 702, 704 (Mo. Ct. App. 1976).

As to the first element, the Court finds that Allstate assumed control over negotiation and

settlement and legal proceedings brought against Halstead, its insured.  On November 17, 1997,

plaintiff sent Allstate an offer to settle her claim against Halstead.  Three days later, on November

20, 1997, Allstate rejected plaintiff's offer without even attempting to contact Halstead.  In so doing,

Allstate effectively assumed unilateral and complete control over the negotiation and settlement of

the claim.

As to the second element, Allstate correctly points out that Halstead (the insured) did not

demand that Allstate settle the claim.  See Bonner v. Auto Club Inter-Ins. Exch., 899 S.W.2d 925,

928 (Mo. App. 1995) (second element of bad faith failure to settle not met where driver never made

demand to settle under policy; demands of plaintiffs – who owned car and purchased insurance – not

sufficient to meet this element).  Indeed, a review of the record indicates that Halstead never

9

contacted Allstate concerning coverage, even though he was convicted of criminal charges resulting from the accident.  Plaintiff counters that Allstate did not convey to Halstead the conditional settlement offer which plaintiff made on November 17, 1997.  See Ganaway, 795 S.W.2d at 564 (if insured not advised of offers of settlement, could not have demanded that insurer accept offer; therefore second element of bad faith claim established).  Under Ganaway, the Court finds that plaintiff has established the second element of the bad faith claim.

Allstate asserts that plaintiff has not established the third element – that it refused to settle for an amount within policy limits – because plaintiff never made an offer to settle for policy limits. Allstate correctly points out that the letter of November 17, 1997 was not an *unconditional* offer to settle for policy limits; it included several conditions including (1) that Halstead arrange for any overages, under oath, for an $800,000 claim, (2) that Allstate waive personal injury protection reimbursement and (3) that Allstate agree there would be no release of subrogation claims by under-insured motorist carrier(s).  Allstate cites State Farm Fire & Casualty Co. v. Metcalf, 861 S.W.2d 751 (Mo. Ct. App. 1993), for the proposition that plaintiff must show that she made a clear and unambiguous demand for payment of policy limits.  In Metcalf, however, the Missouri Court of Appeals simply found that the insurance company had "no opportunity" to settle the claim within policy limits.  Metcalf, 861 S.W.2d at 756.  Allstate has cited no Missouri case law to support its argument that for purposes of bad faith failure to settle, the letter of November, 1997 was too ambiguous to constitute a demand for settlement within  policy limits.  The Court has found none. Cf. Bonner, 899 S.W.2d at 928 (letters stating that counsel was "making demand for payment on behalf of client" and asking insurance company to contact plaintiff's attorney so than "amicable settlement may be made" did not state amount sought and thus did not constitute demand for

10

purposes of tort of bad faith refusal to settle).  The record does not suggest that any of the conditions of settlement were unreasonable, or that Halstead would have declined a settlement for policy limits on the terms which plaintiff offered.  Indeed, Halstead would have had strong incentives to accept plaintiff's offer.  The Court therefore finds that Allstate declined plaintiff's offer to settle for policy limits.

As to the fourth element, Allstate argues that plaintiff has not shown that it acted in bad faith when it declined to pay the policy limits in November of 1997.  The Missouri Supreme Court has explained that "[b]ad faith is, of course, a state of mind, indicated by acts and circumstances, and is provable by circumstantial as well as direct evidence.  Each case must stand and be determined upon its particular state of facts."  Zumwalt v. Utilities Ins. Co., 228 S.W.2d 750, 754 (Mo. 1950) (internal citation omitted).  The law requires the insurer to "act honestly to effectually indemnify and save the insured harmless as it has contracted to do - to the extent, if necessary, that it must make whatever payment and settlement an honest judgment and discretion dictate, within the limits of the policy." Id.  Where the insurer's and the insured's interests conflict, an insurer cannot protect its own interests to the detriment of its insured's interests, but instead, the insurer must *sacrifice its interests in favor of those of the [insured]*." Id. at 756.

Allstate argues that it acted in good faith because it relied upon the advice of counsel when it decided not to pay policy limits in November of 1997 based on lack of coverage.  Specifically, Allstate asserts that it relied upon Modin's judgment that it had no coverage if Halstead was fleeing police just before the accident occurred.  In his letter to Allstate, however, Modin noted that if the chase was over and Halstead just happened to lose control of the vehicle, that would change his opinion.  Allstate argues that based on Modin's opinion and the police reports, it was reasonable for

11

Allstate to assume that the criminal or intentional act exclusion would apply and that the accident would not be covered. The police reports which Allstate received before it declined the settlement offer on November 20, 1997, however, uniformly support a conclusion that the accident occurred *after* the officers had abandoned the chase.

Allstate's argument also ignores the fact that when it refused to settle the claim within policy limits on November 20, 2007, it had not even attempted to communicate the settlement offer to Halstead, its insured, or to determine the facts of the accident from Halstead and plaintiff. At the time, Allstate knew that plaintiff was severely injured in the accident and that Halstead's potential liability was significantly higher than the policy limits of $25,000. Allstate also knew that a jury would almost certainly find that Halstead was liable for plaintiff's injuries. Further, this is not a case where Allstate merely delayed in acting on a settlement offer. See Peckham v. Cont. Cas. Ins. Co., 895 F.2d 830, 835 (1st Cir. 1990) (courts should not permit bad faith to become sword for claimants rather than shield for insureds). Allstate stood on its denial of coverage and failed to consider the interests of Halstead, who was its insured. The Court finds that in light of the enormous risk to Halstead in refusing plaintiff's offer, Allstate's conduct in doing so without even attempting to relay the offer to Halstead was in bad faith.

**IT IS THEREFORE ORDERED** that Allstate's Motion For Judgment As A Matter Of Law (Doc. #96) filed April 18, 2007 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that judgment be entered for plaintiff in the amount of $75,000.00.

Dated this 23rd day of July, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Court