# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHELBY MOSES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 05-2488-KHV |
| CHRIS HALSTEAD, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Garnishee. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Shelby Moses brings suit seeking a garnishment order against Allstate Insurance Company for its alleged negligent or bad faith refusal to settle her claim against Chris Halstead, Allstate's insured. This matter is before the Court on remand from the Tenth Circuit. For reasons set forth below, the Court finds that that plaintiff is entitled to judgment.

## Procedural Background

This garnishment action stems from a one-vehicle accident in which Shelby Moses sustained significant bodily injuries. At the time of the accident, plaintiff was riding in a car operated by Chris Halstead and insured by Allstate. On November 20, 1997, Allstate rejected plaintiff's offer to settle her claims against Halstead for the policy limits of $25,000 plus other conditions. Plaintiff then sued Halstead in the Circuit Court of Buchanan County, Missouri, and the jury awarded her $100,000. In partial satisfaction of the judgment, Allstate paid plaintiff the policy limits of $25,000. Plaintiff registered her judgment in the District Court of Atchison County, Kansas, and requested an order

of garnishment against Allstate for negligent or bad faith refusal to settle her claim against Halstead. Allstate removed the action to this Court on November 18, 2005.

Allstate filed a motion for summary judgment. Applying Kansas substantive law, the Court found material issues of disputed fact and overruled Allstate's motion.[1] At the bench trial, Allstate contended that Missouri law applied.[2] The Court agreed, but found that Allstate had acted in bad faith in refusing to settle. The Court thus entered judgment for plaintiff.

On October 23, 2007, the Court sustained Allstate's motion for reconsideration or for new trial. See Doc. #118. The Court found that under Missouri law, because plaintiff was not the assignee of the insured, she could not recover amounts in excess of the policy limits under a bad faith theory. The Court rejected plaintiff's argument that the Court should have applied Kansas law, which does not require an assignment in these circumstances. The Court entered judgment for Allstate, and plaintiff appealed.

The Tenth Circuit reversed, finding that this Court had erred in determining that Kansas courts would apply Missouri substantive law to the issue whether plaintiff has a cause of action for negligent or bad faith refusal to settle. See Moses v. Halstead, 2009 WL 2857187, at * 2 (10th Cir. Sept. 8, 2009). Specifically, the Tenth Circuit held that whether plaintiff has a cause of action for negligent or bad faith refusal to settle goes to the substance of Allstate's contractual duties rather than the manner of performance, and therefore the law of the place where the contract was made – here, Kansas – controls. The Tenth Circuit noted that under Kansas law, plaintiff did not need to obtain an

---

[1] Both sides based their summary judgment arguments on Kansas law.

[2] The Court took the issue under advisement, noting that in the pretrial order, Allstate had asserted that Missouri law applied.

2

assignment of rights from Halstead to bring a claim against Allstate in excess of the policy limit for a negligent or bad faith refusal to settle. To the contrary, it held that

> Kansas law is settled that in a garnishment action, a garnishor is a third-party beneficiary of the underlying contract of insurance entitled to assert a claim arising from a breach of the insurance company's duty to exercise reasonable care and good faith in efforts to settle a claim against its insured. See Gilley v. Farmer, 207 Kan. 536, 543-44, 485 P.2d 1284 (1971); Farmco, Inc. v. Explosive Specialists, Inc., 9 Kan. App. 2d 507, 515, 684 P.2d 436 (1984).

2009 WL 2857187, at *6. The Tenth Circuit held that under Kansas law, Allstate owed plaintiff a duty of care, as follows:

> With respect to the merits of the claim against Allstate, under Kansas law an insurance company has a "duty to exercise reasonable care and good faith in efforts to settle a claim against its insured." Id. To trigger this duty, the insured need only put the insurer on notice of the claim. Cf. Glickman, Inc. v. Home Ins. Co., 86 F.3d 997, 1001 (10th Cir. 1996) (stating that based on "settled insurance contract law in this circuit and Kansas . . . the duty to defend is triggered when there is a potential of liability."). Allstate's duty to act with reasonable care and good faith was thus triggered when [plaintiff's] father put the company on notice of the accident.

Id. The Tenth Circuit noted that "the [district] court relied on almost identical sets of facts to (1) deny Allstate's summary judgment motion (under Kansas law) and (2) find that Allstate refused to settle in bad faith at trial (under Missouri law)." Id. Nevertheless, because this court had not had the opportunity to apply Kansas law to its findings of fact, the Tenth Circuit remanded for it to do so in the first instance. Id. The Court therefore proceeds to apply Kansas law to the findings of fact as set forth after the trial to the Court. See Memorandum And Order (Doc. #102) filed July 23, 2007.

**Findings Of Fact**

Plaintiff's father gave her a car and insured it with Allstate. On November 22, 1996, Halstead wrecked the car, with plaintiff in it. On the day of the accident, police in Atchison, Kansas responded to a report that Halstead had been involved in criminal activity at a convenience store and that he had

a weapon. When they pursued Halstead, he rammed a police car and drove off. Officers pursued the vehicle into Missouri, where sheriff's officers for Buchanan County joined the pursuit. The officers lost sight of the vehicle. Minutes later Halstead ran off the road, the vehicle overturned and plaintiff suffered severe injuries. Shortly thereafter, plaintiff's father reported the accident to Allstate, which began an investigation.

On January 9, 1997, plaintiff's counsel wrote Allstate a letter which stated in part as follows:

Please consider this my representation letter and also a demand letter on behalf of Shelby Moses who was a passenger in the subject vehicle at the time of the collision.
. . .
Both she and her father make the following claims:
1. For the reasonable value of the 1989 Chevrolet Barreta.
2. For PIP benefits including medical expenses to date up to the policy limits, and rehabilitation expenses and lost earnings.
3. Policy limits of all subject policies for personal injuries.

Our claim is based upon the severe injuries, the high medical expenses, which although we don't know the exact amount of, presently approximate $80,000, and the fact that the injured party was not awake at any point in time when the events occurred on November 22, 1996.

We also reserve the right to make a first party claim against Allstate for not settling in good faith, and if our claims are not resolved in good faith, to seek all damages, including the damages in excess of the policy limits directly against Allstate.

Plaintiff's Ex. 8. Four days later, on January 13, 1997, Allstate interviewed plaintiff's father. He told Allstate that his daughter had permission to drive the car and that she had control of the vehicle most of the time.

On January 30, 1997, Allstate claims adjuster Wendy Griffith referred the matter to counsel Dick Modin, for investigation and a legal opinion whether the insurance policy covered Halstead's conduct. Modin's associate contacted and interviewed some of the police officers involved in the car chase, including Police Corporal Bobby Young and Highway Patrol Officer J.C. Phillips.

4

On February 17, 1997, Modin sent Allstate a letter outlining his opinion as to coverage. Plaintiff's Ex. 11. Modin stated that he assumed that plaintiff would present evidence that Halstead was driving the vehicle with her consent and that if so, Halstead would be an "insured" under the policy.[3] Modin suggested that Halstead's conduct was intentional or criminal, however, and thus fell under the policy exclusion for "damages an insured person is legally obligated to pay because of bodily injury or property damages which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person." Plaintiff's Ex. 11 at 2; Plaintiff's Ex. 16. Modin based his conclusion on the assumption that Halstead had wrecked the car during a high speed chase with police. He noted that if the chase had ended before the accident, the criminal conduct exclusion would not apply.[4] Modin stated that he was still investigating whether the chase was over at the time of the accident, and said that he would let Griffith know what he turned up. He stated that he had made certain factual assumptions, and that different facts could change his analysis and conclusion. Modin suggested that Allstate "give them a reservation of rights and invite them to do the research and make any suggestions that we are wrong." Plaintiff's Ex. 11 at 3. Modin enclosed a copy of a memorandum which noted that although no cases directly addressed the intentional acts exclusion in a similar fact situation, there was "some authority" on which to argue that it applied to this case.[5]

---

[3] Under the policy, an insured includes any person using the insured auto with the owner's permission. Id. at 1-2; Plaintiff's Ex. 16 at 5.

[4] Plaintiff does not remember the accident, but Allstate never interviewed plaintiff or Halstead to determine whether the chase had ended before the accident.

[5] The memorandum cited two cases. See Hamidian v. State Farm Fire & Cas. Co., 251 Kan. 254, 262, 833 P.2d 1007, 1013 (1992) (intentional shooting related to bump and run robbery far removed from proper use of motor vehicle and thus precluded coverage under auto liability

(continued...)

On February 21, 1997, Modin sent Allstate a copy of the Buchanan County sheriff's report and an unsigned draft of a statement from Officer Young. Modin stated that this completed his work on the matter unless Allstate thought he should do additional work. Officer Young's statement indicated that he had stopped pursuing Halstead before the accident. The Buchanan County sheriff's report indicated that Officer Jeff Gentry had also stopped the pursuit before the accident because he was unfamiliar with the area. Officer William Albertson stated that he had lost sight of the suspect, turned around and traveled a mile when he saw someone walking out of a ditch and then spotted the vehicle upside down about 20 to 25 feet off the roadway.

On March 4, 1997, although it had no information that Halstead was still attempting to elude police at the time of the accident, Allstate sent Halstead a letter which stated that it was denying coverage pending further investigation. See Plaintiff's Ex. 14. Allstate knew that Halstead was in the Atchison County jail, but it sent the letter to his address in Topeka. The post office returned the letter as undelivered.

On April 28, 1997, Modin sent Allstate a signed copy of Officer Young's statement which indicated that on November 22, 1996, Halstead had rammed his police car when he tried to pull him over. It stated that Officer Young had pursued Halstead's vehicle into Missouri but broke off the chase before the accident when he lost sight of the vehicle.

On November 17, 1997, plaintiff sent Allstate a letter which stated in relevant part as follows:

Shelby Moses has authorized me to settle our claim in the amount of your policy limits

---

[5](...continued)
insurance); Farm Bureau Mut. Ins. Co. v. Evans, 7 Kan. App.2d 60, 63-64, 637 P.2d 491, 494 (1981) (injuries suffered when firecracker thrown from vehicle not covered because not natural and reasonable incident or consequence of use of vehicle).

> [$25,000] and this offer shall remain open until the 1st day of December, 1997. My
> client will accept policy limits contingent upon Chris Halstead making arrangements
> for any overages, under oath, for this $800,000 claim. A verified financial statement
> of all present or future assets will suffice.

Plaintiff's Ex. 17. The letter also asked Allstate to waive personal injury protection reimbursement and agree that the settlement would not release any subrogation claim by an underinsured motorist carrier.

Three days later, on November 20, 1997, Allstate declined plaintiff's settlement offer, stating that it had sufficient evidence to deny coverage because "it is obvious Mr. Halstead was in the commission of a criminal act at the time this accident occurred." Plaintiff's Ex. 18. Allstate did not inform Halstead of the settlement offer.

In July of 2000, plaintiff filed suit against Halstead. On July 26, 2000, Allstate sent Halstead a reservation of rights letter stating that it denied coverage but would defend him under the policy.[6] Allstate hired attorney Tim Mudd to represent Halstead. In August of 2001, Allstate filed a declaratory judgment action seeking a ruling that Halstead's conduct was not covered by the policy.[7] Allstate filed a motion for summary judgment in the declaratory judgment action. After the trial court

---

[6] The Kansas Supreme Court has explained the reservation of rights as follows:

[A] liability insurer which assumes the defense of an action against the insured may save itself from the bar of waiver or estoppel in a subsequent action upon the policy if, in the action against the insured, it clearly disclaims liability under the policy, and gives notice of its reservation of a right to set up the defense of noncoverage.

Bogle v. Conway, 199 Kan. 707, 711-712, 433 P.2d 407, 410 (1967) (to preserve defense of noncoverage, insurance company must provide proper nonwaiver and reservation of rights notice to insured).

[7] Allstate moved to consolidate the declaratory judgment action with plaintiff's tort case against Halstead. Over Halstead's objection, the state trial court granted the motion.

7

denied the motion, Allstate dismissed the declaratory judgment action. At that point, Allstate offered plaintiff the policy limits of $25,000.[8] Plaintiff declined to settle, and the case proceeded to trial with Mudd representing Halstead. The jury returned a verdict of $100,000 in favor of plaintiff against Halstead and the court entered judgment for plaintiff. Plaintiff appealed and the Missouri Court of Appeals affirmed. Allstate then paid the policy limits of $25,000.

Once plaintiff obtained a judgment against Halstead, she became his judgment creditor and attempted to collect the judgment from Allstate in this garnishment proceeding. See Stewart v. Mitchell Transp., 197 F. Supp.2d 1310, 1316 (D. Kan. 2002) (automobile accident victim may not sue insurer directly by asserting third-party beneficiary status; only when claimant becomes judgment creditor against tortfeasor may she file direct action against insurer). Plaintiff claims that Allstate is liable for the entire judgment against Halstead because it acted negligently or in bad faith when it did not timely inform him of her settlement offer in November of 1997 and did not settle the liability claim in the face of the coverage dispute.

## Conclusions Of Law

Plaintiff asserts that Allstate breached its duty to act in good faith and without negligence in defending and settling her claim against its insured, Halstead. Under Kansas law, such a claim is a contract action. See Stewart, 197 F. Supp.2d at 1310. Implicit in the usual liability insurance policy is a covenant by the insurer that in defending or settling a claim against its insured, it will act in good faith and with reasonable care for the insured's interests. Glenn v. Fleming, 247 Kan. 296, 305, 799 P.2d 79, 85 (1990); see Americold Corp., 261 Kan. at 830, 934 P.2d at 81 (in defending and settling

---

[8] Before the state court trial, Allstate knew that any jury verdict would exceed the policy limits and had evaluated the case as one of clear liability by Halstead and damages in the range of $300,000 to $800,000.

claims against insured, insurer owes duty to act in good faith and without negligence); Johnson v. Westhoff Sand Co., 31 Kan. App.2d 259, 276, 62 P.3d 685, 699 (Kan. App. 2003) (garnishor is third-party beneficiary of underlying contract of insurance and is entitled to assert claim arising from breach of insurer's duty to exercise reasonable care and good faith in efforts to settle claim against insured).

Whether an insurer is liable for an excess judgment depends on the circumstances of the particular case. Glenn, 247 Kan. at 305, 799 P.2d at 85. The insurer's conduct must not be viewed through hindsight, but rather as the case fairly appeared to the insurer and its agents and attorneys during the time the case was under construction. Rector v. Husted, 214 Kan. 230, 239, 519 P.2d 634, 641 (1974) (citing Bollinger, 202 Kan. at 341, 449 P.2d at 514). An insurance company which acts honestly and in good faith upon adequate information is not liable merely because it failed to predict the result; something more than mere error of judgment is necessary to constitute bad faith. Bollinger, 202 Kan. at 341, 449 P.2d at 514; see also Glenn, 247 Kan. at 305-06, 799 P.2d at 85; Snodgrass v. State Farm Mut. Auto. Ins. Co., 15 Kan. App.2d 153, 169, 804 P.2d 1012, 1024 (1991) (insurer's duty may be suspended if good faith question as to coverage).

The Kansas Supreme Court has noted that the distinction between the "bad faith" and "negligence" standards for insurers has long been blurred. Americold, 261 Kan. at 845, 934 P.2d at 89 (though "negligence" and "bad faith" not synonymous in strict legal sense, distinction less marked than terms would suggest). The Kansas Supreme Court explained that courts believed that "good faith" in its ordinary sense was too low a test for an insurer performing an insurance contract, and thus applied other tests such as "to act with due care, without negligence, fair dealing, etc." Id. at 845-46, 934 P.2d at 90 (quoting Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co., 232 Kan. 76,

80, 652 P.2d 665, 668 (1982) (terms simply statements of contractual obligation insurer undertakes under duty to defend)). The duty to act in good faith and without negligence applies to a liability insurer's coverage decision if the insurer uses lack of coverage as the reason for rejecting a reasonable settlement offer within policy limits. Id. at 846, 934 P.2d at 90. In Americold, the Kansas Supreme Court stated that "[a]lthough we have previously said that something more than mere error of judgment is necessary to constitute bad faith, . . . negligence or a lack of good faith in the coverage investigation or the decision to deny coverage leading to a mistake in failing to settle breaches the insurer's duty." Id. (insurance company not required to settle claim in face of good faith question regarding coverage). In that regard, it adopted five factors to consider in determining whether a denial of coverage justifies an insurer in rejecting a policy limit demand. Id.; see also Wolverton v. Bullock, 2000 WL 1546525, at *5 (D. Kan. Sept. 15, 2000)). These factors are (1) whether the insured was able to obtain a reservation of rights; (2) efforts or measures the insurer took to resolve the coverage dispute promptly or in such a way to limit any potential prejudice to the insured; (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue; (4) the insurer's diligence and thoroughness in investigating the facts related to coverage; and (5) efforts by the insurer to settle the liability claim in the face of the coverage dispute. Americold, 261 Kan. at 846, 934 P.2d at 90.

This Court has previously applied the Americold factors to claims where an insurer rejected a policy limit demand based on denial of coverage. See Wolverton, 2000 WL 1546525, at *5. Plaintiff contends that under Americold, Allstate acted negligently or without good faith in the coverage investigation and the decision not to settle for policy limits. The Court agrees. Further, even under the good faith test set out in Glenn, plaintiff has shown that that Allstate did not act in good faith and without negligence when it declined the settlement demand based on lack of coverage.

The first Americold factor is whether the insured obtained a reservation of rights. Under Kansas law, an insurance company may agree to defend the insured while reserving the right to assert that the claim is not covered. Such an agreement with the insured must be fairly and timely made. See First Fin. Ins. Co. v. Bugg, 265 Kan. 690, 708-10, 962 P.2d 515, 527-28 (1998) (liability insurer which assumes defense of action against insured may save itself from bar of waiver or estoppel in subsequent action upon policy if, in action against insured, it clearly disclaims liability under policy and gives notice of reservation of right to set up defense of non-coverage). Further, under Kansas law a reservation of rights notice must clearly set forth the reason for denial of coverage and inform the insured of his rights, including his right to decline the insurer's defense and the consequences if the insurer assumes the defense. See Bogle, 199 Kan. at 712, 433 P.2d at 411.

On March 4, 1997, Allstate sent Halstead a letter which denied coverage. Although Allstate knew that Halstead was in the Atchison County jail, it sent the letter to his address in Topeka. The postal service returned the letter undelivered but Allstate did not send another letter until July of 2000 – more than three years later – after plaintiff had filed suit against Halstead in Missouri. In the intervening three years, plaintiff's attorney had made two settlement demands for policy limits. Allstate refused those demands without consulting Halstead. This first Americold factor weighs in favor of plaintiff.

The second Americold factor is whether Allstate made efforts to promptly resolve the coverage dispute or to limit any potential prejudice to its insured. On November 17, 1997, plaintiff offered to settle for policy limits of $25,000.[9] Allstate presented no evidence that it attempted to

---

[9] The letter of November 17, 1997 was not an unconditional offer to settle for policy limits; it included several conditions including (1) that Halstead arrange for any overages, under

(continued...)

11

inform Halstead of this settlement offer. Allstate rejected the offer three days later, without consulting Halstead. At that point, Allstate knew that plaintiff had incurred medical costs of almost $80,000. Further, at the time Allstate rejected the settlement offer, it had not delivered the reservation of rights letter to Halstead. The second factor weighs in favor of plaintiff.

The third Americold factor is the substance of the coverage dispute or the weight of legal authority on the coverage dispute. Allstate asserts that it had determined that plaintiff's claim was not covered because Halstead's conduct fell under an intentional/criminal act exclusion. Modin's coverage opinion stated that the policy exclusion for damage from a criminal or intentional act was arguably consistent with the statutorily allowed exclusion for coverage "for damages arising from an intentional act." K. S. A. § 40-3107. Modin explicitly based his coverage opinion on the factual assumption that Halstead had wrecked the car during a high speed chase with police, and that his actions were intentional. He noted that if the chase ended before the accident, the intentional conduct exclusion would not apply. He stated that he was still investigating whether the chase was over at the time of the accident.

As for the law, Modin acknowledged that he found no controlling cases holding that the intentional act exception would apply. Rather, he stated that Allstate had "some authority" on which to argue the exclusion, and cited cases factually distinguishable from this case. See Hamidian v. State Farm Fire & Cas. Co., 251 Kan. 254, 262, 833 P.2d 1007, 1013 (1992) (intentional shooting related

---

⁹(...continued)
oath, for an $800,000 claim, (2) that Allstate waive personal injury protection reimbursement and (3) that Allstate agree that subrogation claims by underinsured motorist carrier(s) would not be released. The record does not suggest that any of the conditions of settlement were unreasonable, however, or that Halstead would have declined a settlement for policy limits on the terms which plaintiff offered. Indeed, Halstead would have had strong incentives to accept plaintiff's offer. The Court therefore finds that Allstate declined plaintiff's offer to settle for policy limits.

12

to bump and run robbery far removed from proper use of motor vehicle and thus precluded coverage under auto liability insurance); Farm Bureau Mut. Ins. Co. v. Evans, 7 Kan. App.2d 60, 63-64, 637 P.2d 491, 494 (1981) (injuries suffered when firecracker thrown from parked vehicle not covered because not natural and reasonable incident or consequence of use of vehicle).[10] Allstate argues that based on Modin's opinion and the police reports, it was reasonable to assume that the criminal or intentional act exclusion would apply and that the accident would not be covered. The police reports which Allstate received before it declined the settlement offer on November 20, 1997, however, uniformly supported a conclusion that the accident occurred *after* the officers had abandoned the chase. The Court finds that the third factor favors plaintiff.

The fourth factor in the Americold analysis is the insurer's diligence and thoroughness in investigating the facts pertinent to coverage. Here, neither Allstate nor Modin ever contacted Halstead or any other occupant of the car to determine how the accident happened. When Modin wrote his opinion letter on February 17, 1997, he stated that the factual investigation was not complete and that further investigation was needed. Allstate's lack of diligence and thoroughness in investigating the facts pertinent to coverage weighs in favor of plaintiff.

---

[10] The Kansas Supreme Court has recently held that driving a car at speeds of 100 m.p.h. in an attempt to elude police precluded coverage under an insurance policy which excluded coverage for "bodily injury caused intentionally" by the driver. See Thomas v. Benchmark Ins. Co., 285 Kan. 918, 933, 179 P.3d 421, 431 (Kan. 2008). The Kansas Supreme Court refined the "intentional act" or "intentional injury" test in Kansas, as follows:

> The insured must have intended both the act and to cause some kind of injury or damage. Intent to cause the injury or damage can be actual or it can be inferred from the nature of the act when the consequences are substantially certain to result from the act.

Id. (injury "substantially certain" where individual driving wrong way against traffic at 100 m.p.h. through neighborhoods).

Finally, the fifth factor in the Americold analysis is Allstate's effort to settle the liability claim in the face of the coverage dispute. In November of 1997, Allstate rejected plaintiffs's offer to settle for policy limits without notifying Halstead of the offer. After plaintiff filed suit – and after the state court denied Allstate's motion for summary judgment on its declaratory judgment action – Allstate offered to settle for policy limits. Plaintiff rejected the offer and proceeded to trial, where she won a $100,000 judgment against Halstead. This factor also weighs in favor of plaintiff.

The Court finds that Allstate breached its duty to act in good faith and without negligence when it declined plaintiff's settlement demand based on lack of coverage.

**IT IS THEREFORE ORDERED** that judgment be entered for plaintiff in the amount of $75,000.

Dated this 13th day of October, 2009 at Kansas City, Kansas.

>                           s/Kathryn H. Vratil
>                           KATHRYN H. VRATIL
>                           United States District Court